# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ROGER SIMPSON,

        Petitioner,    :    Case No. 1:21-cv-777

- vs -    District Judge Timothy S. Black
    Magistrate Judge Michael R. Merz

TIM SHOOP, WARDEN,[1]
 Chillicothe Correctional Institution

                                                    :

        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case, brought by Petitioner Roger Simpson under 28 U.S.C/ § 2254 with the assistance of counsel, to obtain relief from his conviction in the Butler County Court of Common Pleas (Petition, ECF No. 1). On Magistrate Judge Litkovitz's Order, the Warden has filed the State Court Record (ECF No. 4) and a Return of Writ (ECF No. 5). Petitioner's reply[2] (ECF No. 17) completed the pleadings and rendered the case ripe for decision.

---

[1] Per advice from Respondent's counsel, Simpson is now incarcerated at Chillicothe Correctional Institution. Tim Shoop, Warden at that facility, is substituted as Respondent, pursuant to Fed.R.Civ.P. 25 and the caption is amended as set forth above.

[2] Petitioner labels his reply as a "Memorandum in Opposition to the Warden's Motion to Dismiss" and prays in his last paragraph that "the Warden's dismissal motion should be overruled." (Memorandum, ECF No. 17, PageID 403 and 413). The Warden has filed no motion to dismiss. Under Habeas Rule 5 the pleadings in a habeas corpus case are denominated the "petition," the "answer," and the "reply," although it remains common for the answer to be referred to as the "return of writ," and the reply as the "traverse," terms that were in common use before adoption of the Habeas Rules in 1976. In ordering the Warden to answer, Magistrate Judge Litkovitz set a date for Petitioner to file a "reply." Petitioner applied five times to extend that time (ECF Nos. 6, 8, 10, 12, and 14), four times using the term "reply" and once the term "traverse." Petitioner's Memorandum in Opposition was timely filed within the last extension and will be treated by the Court as Petitioner's reply for all purposes.

The Magistrate Judge reference in the case was recently transferred to help balance the workload in the District.

**Litigation History**

On June 14, 2017, a Butler County grand jury indicted Simpson on twenty-three counts of sexual misconduct: ten counts of rape, five counts of sexual battery, two counts of kidnapping, four counts of complicity to rape, and two counts complicity to sexual battery. (ECF 4, Exhibit 1; PageID 11-26). Simpson's charges arose from his participation, along with two codefendants, in a rape of a single victim, B.H., on February 11-12, 2017, at Miami University.

A jury convicted Simpson on all counts. After some mergers of allied offenses, he was sentenced to a total of fifty-one years imprisonment on five counts of rape, one count of kidnapping, and two counts of complicity to rape.

Simpson appealed to the Twelfth District Court of Appeals, raising two assignments of error. That court affirmed the convictions. *State v. Simpson*, 2019-Ohio-1493 (Ohio App. 12th Dist. Apr. 22, 2019). Simpson did not seek review in the Supreme Court of Ohio. The two assignments of error raised on direct appeal are no longer at issue in the case.

On July 22, 2019, Simpson, represented by the same counsel who represents him here, filed an Application to Reopen his direct appeal under Ohio R. App. P. 26(B). He claimed counsel on direct appeal was ineffective for omitting the following assignments of error:

> 1. The trial court erred by admitting codefendant Gibson's out-of-court hearsay statements that inculpated Simpson over Simpson's objections.
>
> 2. The trial court erred by sentencing Simpson to an aggregate 51-year prison term after a jury trial, where codefendant Mincy

> received an 8-year term upon a plea and codefendant Gibson received a 5-year term upon a plea.
>
> 3. The trial court erred by failing to record the rape-shield hearing, failing to journalize its rape-shield holding, and failing to preserve and file the proffered exhibit containing the rape-shield evidence.

(26(B) Application, State Court Record, ECF 4, Exhibit 9; PageID 96). The Twelfth District denied the Application and Simpson appealed to the Supreme Court of Ohio, raising the following two propositions of law:

> 1. Appellate ineffectiveness is measured in the application and reopening by comparing the presented arguments on direct appeal with omitted ones, by applying the Sixth Circuit's *Mapes* factors to weigh the strengths, weaknesses, and viability of those omitted arguments, and by evaluating postconviction facts about appellate counsel's preparedness and tactics.
>
> 2. Rule 26(B) reopening is a postconviction procedure and omitted arguments from direct appeal are defaulted until a merits determination of appellate ineffectiveness is made, which triggers the remedy of eliminating default and allowing review of the omitted arguments on their merit.

(Memorandum in Support of Jurisdiction, State Court Record, ECF 4, Exhibit 13; PageID 125).

The Ohio Supreme Court accepted jurisdiction only over the first proposition and ultimately rejected it on the merit. *State v. Simpson,* 164 Ohio St. 3d 102 (2020). On December 15, 2021, Simpson filed the instant habeas corpus petition, pleading one ground for relief:

> **Ground One:** Simpson was denied the effective assistance of appellate counsel under the Sixth and Fourteenth Amendments. On direct appeal, appellate counsel presented weak issues, omitted stronger and obvious issues, and failed to meet with trial counsel, obtain the file, or review the file to research issues for appeal. The most important defaulted issue was that Simpson received a 51-year term and his codefendants, with roughly equal culpability, received 8- and 5-year terms, respectively. Only Simpson went to jury trial; the codefendants accepted plea deals.

(Petition, ECF 1, PageID 2).

3

**Sufficiency of Pleading**

Respondent criticizes the Petition under the general standard for measuring the adequacy of a civil complaint in federal practice[3]. He notes that Simpson's sole ground for relief has as its first sentence:

> Simpson was denied the effective assistance of appellate counsel under the Sixth and Fourteenth Amendments. On direct appeal, appellate counsel presented weak issues, omitted stronger and obvious issues, and failed to meet with trial counsel, obtain the file, or review the file to research issues for appeal.

(Petition, ECF No. 1, PageID 1). If that language were all there was to Simpson's habeas claim, Respondent would be correct in asserting it failed to state a claim upon which habeas relief could be granted because it is in purely conclusory language: it doesn't tell the Court or the Respondent what strong issues were omitted or weak issues included. It would fail on the substance of the claim and also make it impossible to tell if Petitioner had exhausted state court remedies by comparing that language to claims raised in the state courts.

However, the second sentence of Ground One reads

> The most important defaulted issue was that Simpson received a 51-year term and his codefendants, with roughly equal culpability, received 8- and 5-year terms, respectively. Only Simpson went to jury trial; the codefendants accepted plea deals.

*Id.* Petitioner's use of the phrase "most important" suggests an intention to add other issues later in the case, but in fact Simpson has foresworn any such intention in his Reply and limited himself to the one issue: "Simpson contends that his appellate counsel was ineffective for failing to

---

[3] This argument by Respondent may be what led Petitioner's counsel to respond as if he were facing a motion to dismiss.

4

raise an Ohio disproportionate-sentencing claim on direct appeal. His habeas claim is confined to this point." (Reply, ECF No. 17, PageID 403).

Petitioner's pleading is sufficiently detailed, when clarified by the Reply, to satisfy Habeas Rule 2 and is therefore legally sufficient. The Petition should therefore not be dismissed for failure to state a claim. The claim is referred to hereinafter as the disproportionate sentence or "trial tax" claim.

**Procedural Default by Lack of Fair Presentation**

A habeas petitioner cannot obtain a merits decision on a claim that has been procedurally defaulted in the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). Ordinarily a conclusion that a claim has been procedurally defaulted requires antecedent findings that the State has an applicable procedural rule which was actually enforced by the state courts with respect to the claim in question, that the rule is adequate and independent of federal law, and that the petitioner has not presented adequate excusing cause and prejudice. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015); *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

However, an alternative way of showing a claim is procedurally defaulted is to show that it was not fairly presented to the state courts. To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *Riggins v. McMackin,* 935

F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc) (quoting *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)).

*Allen v. Mitchell*, 953 F.3d 858, 866 (6th Cir. 2020).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it). An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).

Simpson first raised his disproportionate sentence claim as one of three omitted assignments of error in his App. R. 26(B) Application where he asserted its omission constituted ineffective assistance of appellate counsel. (26(B) Application, State Court Record, ECF 4, Exhibit 9, PageID 96). As precedent makes clear, a 26(B) application preserves for habeas review only the claim of ineffective assistance of appellate counsel and not the underlying substantive claim. *Wogenstahl,* 668 F.3d 307, 338 (6th Cir. 2012). Indeed, the 26(B) procedure was created by the Ohio Supreme Court in 1992 to provide a collateral remedy for ineffective assistance of appellate counsel claims other than the post-conviction procedure provided in Ohio Revised Code § 2953.21 for constitutional error at other stages of the criminal process. See *State v. Murnahan*, 63 Ohio St. 3d 60 (1992).

The Twelfth District Court of Appeals decided the Application in November 2019 (Entry Denying Application to Reopen, State Court Record, ECF No. 4, Ex. 11). It held the standard for granting a 26(B) Application was whether there was "a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal. *Id.* at PageID 120, citing *State v. Tenace,* 109 Ohio St.3d 451, 2006-Ohio-2987, ¶ 5 and App.R. 26(B)(5). In turn, ineffective assistance of appellate counsel required satisfying the standard adopted by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), to wit, deficient performance and resulting prejudice; a defendant bears the burden of persuasion on both prongs. *Id.* at PageID 120-21, citing *Tenace* and *State v. Sheppard,* 91 Ohio St.3d 329 (2001). The court found against Simpson on both *Strickland* prongs:

> Counsel's failure to argue the issues appellant presents in his application does not raise a *genuine issue* [italic in original] as to whether counsel was ineffective and has not demonstrated that the results of his appeal would have been different had his appellate counsel raised the three suggested assignments of error he now asserts.

7

(Entry Denying Application to Reopen, State Court Record, ECF No. 4, Ex. 11, PageID 121).

On the disproportionate sentence claim itself, the court held

> Second, Simpson did not demonstrate that this court would have reversed his sentence had appellate counsel challenged the trial court's sentence on appeal. Instead, the trial court properly considered the relevant sentencing guidelines and requirements and there is no indication in the record that the sentence was a result of vindictiveness by the trial court.

*Id.* at PageID 122.

Simpson then appealed to the Supreme Court of Ohio, raising two propositions of law. As is required in a Memorandum in Support of Jurisdiction, Simpson argued this as a case of public or great general interest because:

> This case offers the court the opportunity to explain the two-tiered procedure and standards for an application to reopen an appeal for ineffective assistance of appellate counsel and the reopened appeal itself. Rule 26(B). This court has yet to issue a definitive holding on: i) the significance of reopening as a postconviction procedure that forbids treatment of omitted arguments from direct appeal until counsel is first found ineffective, ii) that a reopening application requires a colorable showing of ineffectiveness and not a merits determination, iii) the standard and factors used by the federal courts to decide ineffectiveness where omitted arguments from direct appeal were stronger than presented ones, iv) the role of fact development in deciding ineffectiveness in the application and reopened appeal, and v) and the relationship between the ineffectiveness claim and omitted arguments from direct appeal in the reopened appeal.
>
> Without a definitive case providing guidance from this court, the lower courts and even appellate treatise writers have erroneously described the two-tiered procedure, misunderstood their purposes, and fumbled over the standards. These errors are described below. Without a correct use of the two-tiered procedure and standards, Ohio litigants are deprived the opportunity to vindicate their right to effective appellate representation; and Ohio courts will fail in their responsibility to safeguard the constitutional rights of its citizens.

(Memo. in Support, State Court Record, ECF No. 4, Ex. 13, PageID 127).

The gravamen of Simpson's Supreme Court appeal is that that court should adopt the test for ineffective assistance of appellate counsel enunciated by the Sixth Circuit Court of Appeals in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999)[4]. In *Mapes* the Sixth Circuit announced eleven factors which "ought to be taken into account" in deciding the competent performance prong of an ineffective assistance of appellate counsel claim and concluded

> Manifestly, this list is not exhaustive, and neither must it produce a correct "score"; we offer these inquiries merely as matters to be considered.

171 F.3d at 427-28.

In the course of arguing for the Supreme Court's taking jurisdiction of this Proposition, Simpson argued his disproportionate sentencing claim as an example of ineffective assistance of appellate counsel in this case (Memo. in Support, State Court Record, ECF No. 4, Ex. 13, PageID 137-38).

Simpson argued this case was an appropriate vehicle for clarifying Ohio ineffective assistance of appellate counsel law and attracted *amicus curiae* support from the Ohio Public Defender as well as opposition from the Ohio Attorney General. The Supreme Court of Ohio took jurisdiction only over the first Proposition of Law, which reads:

> 1. Appellate ineffectiveness is measured in the application and reopening by comparing the presented arguments on direct appeal with omitted ones, by applying the Sixth Circuit's *Mapes* factors to weigh the strengths, weaknesses, and viability of those omitted arguments, and by evaluating postconviction facts about appellate counsel's preparedness and tactics.

The Supreme Court affirmed the Twelfth District and declined to adopt the *Mapes* test.

---

[4] Simpson also cites to *Mapes v. Tate,* 388 F.3d 187 (6th Cir. 2004), a later appeal involving the same capital habeas petitioner in which the eleven considerations were repeated.

9

*State v. Simpson,* 164 Ohio St. 3d 102 (2020)(copy at State Court Record, ECF No. 4, Ex. 22). Instead it held the correct test was the one announced in *Strickland v. Washington,* 466 U.S. 668 (1984), which the Ohio Supreme Court had adopted in *State v. Reed*, 74 Ohio St.3d 534 (1996), and which the Twelfth District had correctly applied here. 164 Ohio St. 3d at 102.

The Supreme Court decision was sharply divided. A plurality consisting of Justices French, Kennedy, and DeWine affirmed both the applicability of the *Strickland* standard and that its application by the Twelfth District was correct. It declined to adopt the *Mapes* factors and noted that the Supreme Court in *Strickland* itself had found that adopting a more detailed set of factors was inappropriate. 164 Ohio St. 3d at ¶ 18, citing *Strickland*, 466 U.S. at 688-89.

Chief Justice O'Connor concurred that *Strickland* provides the correct standard, but would have concluded that

> Simpson presented a colorable claim that his appellate counsel's performance was deficient and that Simpson was prejudiced as a result. However, because Simpson challenged only the applicable standard to App.R. 26(B) applications and failed to challenge his appellate counsel's performance under *Strickland*, I can offer only an advisory assessment of counsel's performance.

164 Ohio St. 3d at ¶ 23. The Chief Justice relied heavily on the Affidavit of lead trial counsel showing that appellate counsel never obtained his file or even discussed the case with him. In addition to these process deficiencies, she believed omission of the disproportionate sentence claim was deficient because the disparity was great; it was prejudicial because Ohio courts had granted relief in analogous cases.

Justice Fischer concurred in the majority opinion, but suggested his Court needed to make clear the distinction between deciding 26(B) applications (Is there a genuine colorable issue for appeal?) and deciding the merits of that issue.

Justice Donnelly, with whom Justice Stewart concurred, would have adopted the *Mapes*

factors. Noting that the process factors (i.e. what did appellate counsel do to prepare to argue?) and the omission of the disproportionate sentence claim were found not to show incompetent performance by the Twelfth District or the majority, he concluded their decision was based on an implicit finding Simpson was not prejudiced: "It can only be because the second prong of *Strickland* is not satisfied—i.e., that Simpson could not have prevailed even with competent counsel—though that is not directly stated." 164 Ohio St. 3d at ¶ 33[5].

Given this history, Respondent argues the disproportionate sentencing issue was not fairly presented to the Ohio Supreme Court (Return, ECF No. 5, PageID 346-51). In particular he asserts "One only need review the Ohio Supreme Court decision to confirm the true issue presented by Simpson was his invitation to Ohio's highest court to change the state court standards when reviewing a state-created collateral procedure for presenting ineffective appellate counsel claims." *Id.* at PageID 350. The Warden's counsel relies on Chief Justice O'Connor's concurrence to prove the disproportionate sentence issue was not before the court for decision: "because Simpson challenged only the applicable standard to App.R. 26(B) applications and failed to challenge his appellate counsel's performance under *Strickland*…". *Simpson*, 164 Ohio St. 3d ¶ 22.

Simpson responds to the Warden's procedural default defense in several ways. First he notes that no Ohio court enforced a procedural default of the disproportionate sentence claim (Reply, ECF No. 17, PageID 412). That argument attacks a straw man. No court can hold that a claim not presented to it is procedurally defaulted. As noted above, failure to fairly present a claim procedurally defaults the claim because the state court has not been given a chance to decide it. *Allen v. Mitchell*, supra.

---

[5] That does not logically follow. Both the Twelfth District and Supreme Court majority affirmed without distinguishing on which *Strickland* branch Simpson had failed.

Second, Simpson argues, he did present an ineffective assistance of appellate counsel claim to the Supreme Court and not, as he reads the Warden to argue that "an IAAC claim is transformed into a different claim when the *Mapes* factors are applied." (Reply, ECF No. 17, PageID 412). This argument does not deal with the Chief Justice's assertion that the substantive disproportionate sentencing claim was not presented.

Simpson fails to deal seriously enough with the cases which hold that the same claim must be presented to all levels of the state courts. He argues that he presented an ineffective assistance of appellate counsel claim in both the Twelfth District and in the Supreme Court. However, they were different ineffective assistance of appellate counsel claims. In the 26(B) application he argued counsel's performance was deficient when measured by the *Strickland* standard. (Appellant's Brief, State Court Record ECF No. 4, Ex. 9, PageID 102). He also cited *Mapes I* for examples of ineffective assistance of appellate counsel, but not as providing the standard for evaluating ineffective assistance of appellate counsel claims. When he reached the Supreme Court, he contended Ohio should adopt the *Mapes* factors as the standard (Memo. in Support of Jurisdiction, State Court Record, ECF No. 4, Ex. 13, PageID 126). This simply is not the same as arguing the Twelfth District erred in its application of *Strickland*.

It is unclear what Simpson wanted the Supreme Court to do with the judgment he had appealed if it decided the *Mapes* factors were to be employed, but presumably at least remand the case to the Twelfth District to apply *Mapes*. Chief Justice O'Connor's opinion implies the Court would not have had the authority to itself apply *Mapes* and find ineffective assistance of appellate counsel in this case, but the parties have not briefed that issue. She would have found ineffective assistance of appellate counsel under Strickland, but "join[ed] the majority opinion in light of the narrow scope of this appeal." *Id.* at ¶ 27.

Justice French's plurality opinion implicitly agrees with the Chief Justice on the scope of

the appeal when she states as the holding that "Because the Twelfth District Court of Appeals applied the correct standard when it considered Simpson's App.R. 26(B) application for reopening, we affirm its judgment." 164 Ohio St. 3d ¶ 1. She makes no statement that *Strickland* was correctly applied. Again she states

> The Twelfth District applied the correct standard when it reviewed Simpson's application for reopening and concluded that Simpson failed to show a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel. We therefore affirm the decision of the Twelfth District.

*Id.* at ¶ 21. Justice Fischer concurred in the plurality opinion, but noted another issue which could not be decided because of the narrow scope of the appeal: a tendency by Ohio's appellate courts to conflate decision on the merits of proposed new assignments of error with the question whether they were colorable.

Justices Donnelly and Stewart in dissent would have accepted *Mapes* and found the disproportionate sentence claim to be a colorable claim of ineffective assistance of appellate counsel under *Mapes*. They offered no opinion on whether the Twelfth District erred under *Strickland*.

Considering all of the Supreme Court opinions, the Magistrate Judge concludes that the Ohio Supreme Court did not decide Simpson's disproportionate sentence claim on the merits because they found it had not been presented. This Court analyzes that conclusion under *Maupin, supra.* First, Ohio has a relevant procedural rule that the Supreme Court will only decide questions over which it has accepted jurisdiction. *Johnson v. Abdullah*, 166 Ohio St. 3d 427 (2021); *See State v. Quarterman*, 140 Ohio St.3d 464 (2014); S*tate v. Chappell*, 127 Ohio St.3d 376 (2010); *State v. Ishmail*, 67 Ohio St.2d 16, 18-19 (1981). Here the court did not decide the substantive ineffective assistance of appellate counsel claim – the disproportionate sentence claim – because it had not accepted jurisdiction to do so. The rule in question is independent of federal law and adequate because it defines the scope of jurisdiction of the State's highest court, useful for distinguishing what that court has decided in a

13

particular case and what it has not. Simpson has offered no excusing cause and prejudice; ineffective assistance of counsel is inapposite because defendants are not entitled to counsel at the stage of appeal to the Ohio Supreme Court, except in capital cases. The Magistrate Judge concludes Simpson's disproportionate sentence ineffective assistance of appellate counsel claim was procedurally defaulted by his failure to include it as a substantive claim in his Ohio Supreme Court appeal. The fact that he used it as a prime example of why the Ohio Supreme Court should adopt *Mapes* is unavailing: he did not present it in a way in which that court could decide it in his favor.

In his Reply, Simpson relies on *State v. Leyh*, 166 Ohio St. 3d 365 (2022), where the court picked up on the distinction noted in Justice Fischer's concurrence in *Simpson* between whether an appellant is entitled to reopening of his or her appeal (must show colorable claim of ineffective assistance of appellate counsel as to both *Strickland* prongs) and whether an appellant is ultimately entitled to relief on his or her ineffective assistance of appellate counsel claim. In a 4-3 decision the court reinforced that distinction and reversed denial of a 26(B) application by the Ninth District Court of Appeals. If Simpson is claiming the Twelfth District has committed the same error here, he has defaulted that claim as well by not appealing the decision on that claim to the Ohio Supreme Court.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed as presenting only a procedurally defaulted claim. However, reasonable jurists could debate this conclusion because it is arguable that the disproportionate sentencing issue could have been decided by the Ohio Supreme Court. Therefore Petitioner should be granted a certificate of appealability on that issue and permitted to appeal *in forma pauperis* if need be.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

August 24, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge
